Page 17-429, Mariusz Tomaszczuk v. Jefferson Sessions III are going to have to receive 15 minutes per side. Mr. Lips, you may proceed to the question and answer. Good morning, Counselor, you may proceed. May it please the Court, my name is Jeremy Lips and I represent Petitioner Mariusz Tomaszczuk. I'd like to reserve three minutes for rebuttal. All right. In Mr. Tomaszczuk's removal hearing, the immigration judge found that his family is living on the edge of survival. Their condition is so dire that the judge found removal here would impose an exceptional and extremely unusual hardship on his family. Two words stand between Mr. Tomaszczuk and immigration relief, habitual drunkard. The provision at issue in this case declares that habitual drunkards categorically lack good moral character. This provision is unconstitutional for two reasons. First, the habitual drunkard provision is unconstitutionally vague. And second, it violates the Equal Protection Clause as applied to Mr. Tomaszczuk. I'll begin with the void for vagueness argument. As an initial matter, under DeMaia v. Sessions, the habitual drunkard provision is subject to the most exacting standard of review, fair notice. And under that standard, the provision cannot stand. It's particularly instructive to look at two state Supreme Court decisions that found habitual drunkard statutes unconstitutionally vague. So- in this factual context, which is to say a deportation proceeding. Sure. So both DeMaia v. Sessions and Schuette v. Lynch held that immigrants have a due process right to fair notice. And fair notice is part of the right to a fair hearing, which even though this is a discretionary relief at issue here- DeMaia was about deportation though, right? It wasn't about cancellation of removal? So that actually was a cancellation of removal case. It's discussed in the Ninth Circuit. And when it went up to the Supreme Court, they didn't discuss cancellation of removal, but it was a cancellation of removal case. And I cite in the brief a variety of cases that involve cancellation of removal or discretionary relief, where the Supreme Court and the Sixth Circuit heard vagueness challenges like the ones here. So I want to talk about these state Supreme Court decisions where- But aren't we pretty clear in the Ashkey case that there is no liberty interest in this kind of situation? So Ashkey involved a due process claim involving- Basically there was- certain nationalities were excluded from a provision, and she said it violated her due process that Cubans were treated differently than people from her country. But that gets to the nature of her claim. Like can she get her claim? But this actually talks about vagueness. But this case is about vagueness. And in Demaya, in Schuette, and even in Verdugo-Morales, which was just decided this year by the Sixth Circuit, immigrants have brought vagueness challenges and the Sixth Circuit has heard it. In the case of Schuette, the Sixth Circuit struck down a statute as being vague. So turning to these state Supreme Court decisions, in Ix Parte Newbern, the California Supreme Court began by noting that the term habitual drunkard is comprised of words that are in general use in the community. But it's precisely this generality of usage that has resulted in there being a variety of different meanings. In fact, the court found that there are almost as many judicially accepted definitions of habitual drunkard as there are courts to formulate them. And for that reason, the court- It doesn't make it vague, does it? I mean, a court can just pick one, right? Why is that vague? So the Louisiana Supreme Court's decision has two particularly good critiques of the phrase habitual drunkard. So first, it's vague as to frequency. So the court asks, like, does a person have to be crocked all the time to be a habitual drunkard? Or what about somebody who's watching the Sunday football game and drinks a couple six packs of beers every week? Is that a habitual drunkard? It's not clear. And the court went through all different kinds of people who could possibly be habitual drunkards. So the court said the skid row bums, the after work- But it has to be vague as applied to your client, right? I mean, why isn't your client just in the core of whatever that statement means? And you can't raise the vagueness challenge of some guy who drinks a beer on Sunday watching a game, right? I mean, it's your client, and it has to be vague as applied to him. So how is it vague as applied to your client? So it's vague as applied to my client because in our brief, we've collected eight different cases from the past 20 years where people engaged in similar conduct and were not found to be habitual drunkards. So in Yacoub v. Gonzalez, for example, the immigrant had two DUIs and two different alcohol-related misdemeanors. What courts or circuits are you referring to? I mean, you can't just say cases. I don't know if they have any import for us here or not. Where are you citing these things from? So the Yacoub case was decided in the District of Ohio. So this is actually a district court that's within this circuit. And this was a case that involved somebody who had two DUIs, who had two different alcohol-related misdemeanors, and the court still did not find him a habitual drunkard. And then this also gets to an issue in the record here. If the statute has to do with how often you drink, the courts below didn't actually ask Mr. Tomaschuk how often you drink. They don't ask do you drink every day, do you drink every week. The focus is, first of all, on the fact that he's an alcoholic, which is— Do you have any Sixth Circuit cases addressing this issue? There are no Sixth Circuit cases addressing this issue. There are many district courts, which I collect. And even the Ninth Circuit noted that just alone having DUIs is not enough to establish that you are a habitual drunkard. But the Ninth Circuit said the statute wasn't vague, right? Correct. I mean, if we went your way, would we be creating a split with the Ninth Circuit? I believe you would, but there are reasons to do so here. So first of all, the Ninth Circuit case upheld a different definition of habitual drunkard than was actually applied here. So in the Ninth Circuit, they said that habitual drunkard did not mean alcoholic. It simply refers to a person who regularly drinks alcohol to excess. And when they looked at the record, the petitioner there drank an average of one liter of tequila a day for 10 years. And based on that record, the court upheld the statute as applied to him. In the present case, the immigration judge made clear that he interpreted habitual drunkard to mean alcoholic. In fact, at one point he referred to the provision at issue here as the habitual alcoholic provision. Do we owe that any deference? So I think you do generally owe deference to a factual finding, but the question here is whether the statute is vague. What about the construction of the statute? So what's telling here is that even in the BIA decision, for example, the BIA notes that there are multiple possible definitions. So it says that habitual drunkard could mean chronic alcoholic, or it could mean a chronic ‑‑ this is page 4 of the record. It could mean chronic alcoholic, or it could mean a chronic alcoholic whose conduct poses more of a threat to the society. But the BIA didn't actually even say which definition it was using. It just said there are multiple possible definitions, and it moved on. Counsel, is there anything in the record below that indicates that your client has ever been diagnosed as an alcoholic? There is no record to that point. However, it's something that the immigration judge found. I mean, he referred to Mr. Tomachuk's alcoholism four times, his disease twice, and his addiction once. And as I said before, he said that he is a, quote, habitual alcoholic. So even though there was no medical finding, the court still very clearly was holding that he was ‑‑ very clearly found that he was an alcoholic here. Another reason why the case in the Maya ‑‑ not the Maya, the Ninth Circuit case, Ledesma, isn't applicable here, is because the court, in reaching its definition of habitual drunkard, specifically relied on Black's Law Dictionary. They cited Black's Law Dictionary to come up with their definition, a person who regularly drinks alcohol to excess. And they said that the dictionary supported their belief that habitual drunkard does not mean alcoholic. But Black's Law Dictionary lists alcoholic as a possible definition of habitual drunkard. So even, like, the very authority that they rely on to decide what the statute means is undermined. But why wouldn't ‑‑ so what if we just said, okay, fine, it's a conduct‑based definition. It means somebody who regularly drinks to excess. There would be substantial evidence in this case that your client would meet that definition, right? And that what would be ‑‑ I don't understand what would be problematic about that. So first of all, I actually don't think that there is substantial evidence here that he did drink regularly. So if you use the Ninth Circuit's definition, the only evidence that's really here is that, first of all, he has a medical condition. He's an alcoholic. He was sober for 13 years, which is for a significant part of the 10‑year good moral character period. And then he has a couple of alcohol‑related misdemeanors that are separated years apart from one another. So in Ledesma, the court actually noted that the person drank very regularly, every single day. Nobody asked Mr. Tomaszek how often he drank. Now, he did say that he drank more than he used to, but he used to be sober for 13 years. The only real testimony about this is from his wife. She said that even after he relapsed following her stroke, he would go months without drinking at a time. So if you think about what is a habit, right? So I brush my teeth every day. That's a habit. According to my wife, I often forget to turn off the bathroom light before I leave the house. That's maybe a bad habit. But if I go on vacation once every few months, I wouldn't say that's a habit. So in conclusion, this court should find that the statute is unconstitutional. It should vacate the decision below, and it should order Mr. Tomaszek back to the United States so he can stand for a new hearing where his good moral character can be considered in the totality of the evidence. Thank you. Thank you very much. Good morning. Morning. May it please the court, Amy Carmichael for the government. Petitioner, his wife, and his son all testified that he has a problem with drinking, and Petitioner also has several alcohol-related convictions. Notably, in 2014 and 2016, he has DUI convictions, and he also has a public intoxication conviction from 2016 that was within a month of his 2016 DUI. Nevertheless, he challenges the board's denial of his application for cancellation of removal on the ground that he failed to demonstrate good moral character because he is a habitual drunkard. He's raising two constitutional challenges, that the provision is void for vagueness and that it violates equal protection. I'd like to start with the vagueness. First of all, Zamiya and Schutte both involved aliens who had convictions for an aggravated felony, and they were found removable on the basis of the aggravated felony. So that is a fundamentally different circumstance in terms of liberty interests than we have here. So were they cancellation of removal cases? They may have also been seeking cancellation of removal, and the courts do note having an aggravated felony conviction categorically bars you from receiving cancellation of removal, even if you're a lawful permanent resident. But they were held removable on the basis of the aggravated felony, and that is what gave them a liberty interest. There was no discretion by an executive official that was involved in that case? Is that what you're saying? Correct. Cancellation of removal applications, on the other hand, are entirely discretionary. And while the petitioner does have a liberty interest in the determination of whether or not he is removable, there's no dispute in this case that he is removable. He does not have status and has never had status since his last petition. Is this all kind of mixed on this issue? We've talked about the Ashkey case or whatever, but what about this Montanez-Gonzalez case? Doesn't that support his view? The court has continuously held that cancellation of removal and discretionary applications do not give rise to a liberty interest. Now, there are some circumstances, such as instances where there's ineffective assistance of counsel or there's problems that infect the entire proceeding. Because the proceedings routinely involve both removability and discretionary relief, those types of errors that could contaminate the entire proceeding, there is a liberty interest. But don't they all broadly fall under the umbrella of due process? Correct. I mean, vagueness, the hearing, whatever it is. Sometimes we say you have a liberty interest such that you can bring a due process challenge, and apparently sometimes we don't. Is there something that we can reconcile those cases with? Yeah, it's the connection to the finding of removability, because there is a due process right in that part. If you think about the proceedings as being two separate pieces, the first part of the determination is whether or not the person is actually removable and there is a liberty interest in that prong. The second part is the relief phase, and only mandatory applications for relief have a liberty interest. That would be like protection under the Convention Against Torture, where there's no discretionary element. However, the cancellation application is discretionary. Not only is there a list of things that he has to show, and it is his burden to demonstrate that he meets those things, but ultimately the immigration judge can deny just on discretion, even if he meets all of the statutory qualifications. The Supreme Court has described the previous iteration of this statute as an act of grace, and that makes the vagueness doctrine particularly inappropriate for cancellation of removal, because the vagueness doctrine is rooted in fair notice and the preclusion of arbitrary enforcement. And for a provision that's entirely discretionary, the fair notice issue is about whether or not he's actually removable, and there's no question that he was on notice that he was removable because he did not have status. And as to the arbitrary enforcement, it doesn't seem like it makes sense for that to be a serious consideration for an application that can ultimately be denied entirely on discretion. But why? I mean, if it's entirely discretionary, why wouldn't he still be entitled to some notice about how the discretion is going to be exercised? Well, so then let's talk about the fact that habitual drunkard isn't vague. The terms have pretty clear meaning. There's a dictionary definition for it. All of the various definitions have core conduct in common, and that core conduct is that you regularly drink to excess. And his testimony, his wife's testimony, his son's testimony all state that he has a drinking problem. In order to overturn... There could be a situation where you would say it means you're an alcoholic, like you have a disease, or perhaps it's just conduct. I regularly drink a liter of tequila a day. I mean, do we have to pick one of the two? Does someone have to pick one of the two? Could it be all of them? And, you know, how do we do that? So I think that the interpretation question and the boundaries of the definition are ultimately a question for the board. But the fact that there may be some situations where it's difficult to determine who's in and who's out isn't sufficient to render the statute void for vagueness. Now, I think... I would argue that this is a conduct-based provision, that the board looked at his conduct. And I think that there is an important distinction here, too, between conduct and the medical diagnosis. Now, the Surgeon General has explained that for the medical diagnosis, it's called an alcohol use disorder. They don't use the term alcoholic. And we do not have evidence that he has actually been diagnosed by a medical professional. A lot of people misuse alcohol without having an alcohol use disorder. And the habitual drunkard provision focuses on that misuse. What about the language in the decision about addiction or disease and the things that counsel cited? Well, again, he hasn't been diagnosed by a medical professional. His son definitely described him as having a... I'm not saying he is. I'm saying that to the extent that decision-makers use those kinds of words, are they really applying a conduct-based analysis, or are they looking for an alcohol disorder? And if they're looking for an alcohol disorder, then maybe there should be a medical expert or something. I think that the way that they're using the words in this decision are to describe his conduct. They're describing his conduct of routinely drinking. There's testimony that his work was impacted because he's a roofer and he can't work when he's drinking. They also examined his conduct in terms of his convictions. He has multiple DUIs. He has a public intoxication. And I think it's important to also note that those convictions were very close in time to the time that his application was decided. In fact, he had a DUI in 2014, and that's what brought him to the attention of DHS. He was put in proceedings after that, and he subsequently had two alcohol-related convictions after he was put into proceedings. He was out on immigration bond at that time. That caused them to revoke his bond, and he testified that he was sober because he was in detention. So that serious alcohol-related misconduct close in time to the application also supports the factual determinations here. And to conclude that he, in fact, met his burden, this court would have to find that the record compels the contrary conclusion, and there's simply not evidence that he doesn't have an alcohol problem, and that he didn't have an alcohol problem during the 10-year period. Again, he, his son, and his wife all testified that he, in fact, did have such a problem. If you'd like to spend a few minutes on the equal protection discussion, again, I think that because this is a conduct-related question, there's not a really meaningful equal protection argument, I don't think. The petitioner has to negate every conceivable basis to support the distinction, and this court has said that that includes the government's rational speculation linking the distinction to a legitimate purpose. And I think it's evident here that there is a legitimate purpose in order to bar habitual drunkards from obtaining... If it were just, if the statute just meant status as having an alcohol use disorder, would there be an equal protection problem? I don't think so, because Congress still has the authority to determine, the purpose of this statute is to determine who is eligible for long-term residence. That's what this is really about. Is there an equivalent argument for the interpretation of the statute, then? If we thought even, if a court thought, oh, if we say it would mean the disease or whatever, that that would perhaps create an equal protection violation or problem, we should interpret it to just be a conduct-based provision. So I don't think that that's actually necessary, because even if you say, well, it's status-based, then all you have to do is look for a rational basis, and I think there's a clear rational basis for Congress making the policy decision to bar people with alcohol problems from receiving the sort of extraordinary relief of cancellation of removal. Only 4,000, under the statute, only 4,000 grants per year of cancellation of removal are permitted. And the legislative history doesn't provide any guidance as to why Congress included the habitual drunkard in the good moral character, but did provide that a good moral character was generally understood to mean conduct which measures up to the standards of the average citizen in the community. How far back does that provision go? The provision was initially added in 1952, and it has been amended. The provision itself has been amended several times since then, but the habitual drunkard provision itself has not been changed since then. What? I'm sorry. The good moral character provision has been amended several times since 1952, but they haven't touched when they amended that provision. Congress did not touch the habitual drunkard. But habitual drunkard was part of the original enactment in 1952. Correct. And it actually stemmed from case law relating to naturalization applications. The good moral character determination has been part of the naturalization application since well before the 1952 enactment. So Congress was drawing on that requirement when they put this provision in the statute. And again, the case law says that that's conduct which measures up to the standards of the average citizen in the community. Now, there's numerous statutes that regulate when and how alcohol can be used. You have to be a particular age to buy it. You can't consume it under certain circumstances or prior to certain activities, such as driving. And those statutes carry criminal penalties in addition to civil penalties. There's all kinds of situations which, as a society, we say it is not okay to drink. So with that in mind, including the habitual drunkard provision and barring this sort of extraordinary relief to a group of people who violate that standard is a completely legitimate purpose. Unless the court has any further questions. I don't believe so. Do you have any questions, Judge Keith? No questions. All right. Apparently no further questions. Then we ask that the court deny the petition for review. Thank you. Thank you. Any rebuttal? So first, I don't want to get hung up on this point, but I disagree with the government's characterization of Schuette and Verdugo-Morales. Both of those are cancellation of removal cases, and still the court found no issue hearing a vagueness determination. And that's because having fair notice is part of the right to a fair hearing under the Due Process Clause. But something I really want to point out is that the government's job is to defend the agency's decision. That's not really what the government has done. Instead, the government has insisted that habitual drunkard simply means somebody who regularly consumes alcohol to excess. That's what they argued in their brief on page 19. But this is not the definition that was embraced by the board. As I mentioned before, the board defined habitual drunkard to mean some type of alcoholic, whether it's just chronic alcoholic or a chronic alcoholic whose conduct poses a danger to society. So not even the government has been willing to defend the definition that was used by the board in this case. So certainly Mr. Tomaszuk did not have fair notice about what habitual drunkard means. And finally, to close, I just want to make sure that the stakes in this case are perfectly clear. Mr. Tomaszuk's wife is paralyzed. She is blind. And about a month after the BIA reached its decision and the record closed, Mr. Tomaszuk's son was hospitalized for several weeks because of a major depressive episode. If a man is going to be separated from his family for the rest of his life, if a man is going to be condemned as irredeemably immoral, he deserves to have fair notice about how he could have avoided that fate. And in fact, the Constitution requires that he have fair notice about it. To this day, Mr. Tomaszuk does not know what the habitual drunkard statute means. And he and his— Would it have changed his conduct if he had known? He wouldn't have—I mean, what would have been different? Your Honor, I don't know what would have been different. It's hard to say. But I certainly know that as a lawyer, I would be very hard-pressed to advise my client about this. If my client came to me and said, you know, what could I do to avoid being a habitual drunkard? Can I—if I drink a couple of glasses of wine every night after work, does that make me a habitual drunkard? If I just drink a lot on the weekends, does that make me a habitual drunkard? I wouldn't know as a lawyer how to advise my client, and I don't think that any lawyer really could. And for these reasons, as I said before, the court should find the statute unconstitutional, vacate the decisions below, and order Mr. Tomaszuk back to the United States. Thank you. All right. Thank you, and the case is submitted.